UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

KYLE B. RICHARDS,

     Plaintiff,

v.

GRETCHEN WHITMER, et al.,

     Defendants.

_____/

Case No. 2:20-cv-122

Hon. Hala Y. Jarbou

## <u>OPINION</u>

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983 and, purportedly, under various other federal and international laws.  Originally, Plaintiff filed his complaint with the United States District Court for the Eastern District of Michigan.  On July 15, 2020, that court ordered Plaintiff's case transferred to the Western District of Michigan (ECF No. 3), which was effectuated the following day (ECF No. 4).  On July 28, 2020, this Court granted Plaintiff's request for leave to proceed with pauper status, noting that although Plaintiff had at least three strikes within the meaning of 28 U.S.C. § 1915(g), he had sufficiently alleged imminent danger under the exception provided by that subsection.  (ECF No. 6.)

When the Court granted Plaintiff leave to proceed with pauper status, it informed him that it would screen the complaint "under 28 U.S.C. §§ 1915(e), 1915A and/or 42 U.S.C. § 1997e(c)(1) . . . [and] will determine whether dismissal or service of process is appropriate . . . ."  (ECF No. 6, PageID.6.)  Yet, Plaintiff has shown little interest in waiting.  In the time since the Court informed Plaintiff that it would screen the complaint, he has filed 10

motions with the Court (ECF Nos. 7, 8, 15–18, 25, 30, 51, 55); five "supplements"[1] either to the complaint or to pending motions (ECF Nos. 9, 23, 24, 37, 44); and sent numerous letters to the Clerk of the Court requesting, among other items, forms for issuing subpoenas (e.g., ECF Nos. 10, 19, 39, 42).  Upon notification that Plaintiff had served or attempted to serve subpoenas on the Macomb County Prosecutor's Office—directing the office to send him "[a]ll child pornographic materials that have been collected or prosecuted by Macomb County within the last 30 years," including both photographs and videos (ECF No. 36, PageID.136)—and on the Embassy of Japan in the United States, the Court quashed both subpoenas as abusive.  (ECF No. 48.)  The Court further ordered Plaintiff to cease serving subpoenas without the Court's authorization and to file a response indicating the status of the other subpoena forms issued by the Clerk of the Court.  In response to the Court's order, Plaintiff filed two notices of interlocutory appeal challenging the order (ECF Nos. 50, 54), a motion requesting leave to appeal with pauper status (ECF No. 51), an objection to the Court's order (ECF No. 49), a motion for reconsideration of the Court's order (ECF No. 55), and a response to the Court's order (ECF No. 56).  Thus, presently before the Court is the complaint and a series of Plaintiff's pending motions.

Under Rule 21 of the Federal Rules of Civil Procedure, a court may at any time, with or without motion, add or drop a party for misjoinder or nonjoinder.  Fed. R. Civ. P. 21.  Applying this standard, the Court will dismiss without prejudice Defendants Whitmer, Washington, and Taskila because they are misjoined.

---

[1] Plaintiff's "supplements" are not supplemental pleadings within the meaning of Rule 15(d) of the Federal Rules of Civil Procedure.  Instead, they are simply statements alleging that Plaintiff has exhausted state remedies (ECF No. 9); duplicative filings of motions (ECF Nos. 23, 24); a supposed "brief in support" of the complaint that includes a list and descriptions of videos and books that he alleges federal law forbids him from receiving in prison (ECF No. 37); and references to Supreme Court cases related to obscenity and child pornography (ECF No. 44).

Further, under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief.  28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c).  The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible.  *Denton v. Hernandez*, 504 U.S. 25, 33 (1992).  The Court will dismiss all claims against Defendant Perttu except for Plaintiff's Eighth Amendment claims related to physical assaults.

## Discussion

### I.   Factual Allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Baraga Correctional Facility (AMF) in Baraga, Baraga County, Michigan.  The events about which he complains occurred at that facility.  Plaintiff sues Michigan Governor Gretchen Whitmer and MDOC Director Heidi Washington.  Plaintiff also sues AMF staff Warden Kristopher Taskila and Resident Unit Manager (RUM) Unknown Perttu.

Although the body of Plaintiff's complaint exceeds 30 pages and is organized into 13 claims, the complaint contains relatively few factual allegations giving rise to a claim under § 1983 or any other law.  Plaintiff's few factual allegations relate to the multiple physical attacks he has endured and believes he will continue to endure while in prison.  Plaintiff believes he has been targeted because, as he asserts, he identifies as a bisexual child lover (BCL), pedophile, and pedosexual (*see, e.g.*, Compl., ECF No. 1, PageID.15), and "[p]edophiles in prison are frequent targets of . . . violence" (*id.*, PageID.3).

3

Connected to this identification, Plaintiff alleges that he was attacked at least 10 times in 2020.  Presumably as part of an incomplete list of the attacks, Plaintiff states that he was assaulted on February 4, March 10, April 5, May 7, and June 15, 2020.  The assailants in most of these attacks allegedly referenced Plaintiff's attraction to children.  Plaintiff contends that these attacks are hate crimes within the description of 34 U.S.C. § 30501 because he was, and continues to be, targeted for his sexual orientation.  Plaintiff appears to focus his first claim, however, on an argument that Defendants have been dismissive that his allegations constitute hate-based violence under § 30501.  Additionally, Defendant Perttu allegedly responded to the attacks on April 5, May 7, and June 15, 2020, but Perttu "refused to lock any of the assailants up, or even remove them from [Plaintiff's] environment."  (Compl., ECF No. 1, PageID.4.)

Plaintiff further alleges that the MDOC does not adequately protect him.  He asserts that the MDOC does not place prisoners who identify as pedophiles in special housing.  Plaintiff alleges that Defendants Whitmer, Washington, and Taskila are aware that he has been attacked, but they have not provided alternative housing.  He further alleges that his mother called Defendant Whitmer's office and spoke with her directly, but that Whitmer's responses "were legally defensive, evasive, and geared at avoiding liability."  (*Id.*, PageID.5.)  Plaintiff contends that Defendant Whitmer thus knew of the violence and "is liable for . . . knowing and deliberately allowing Plaintiff to incur harm, despite multiple complaints and pleas[] from her constituents."  (*Id.*)  Apparently in response to Plaintiff's petitions to recognize the attacks against him as hate crimes, Defendant Washington allegedly responded that violence in prisons was "part of the punishment."  (*Id.*, PageID.8.)

In his second claim, Plaintiff alleges that Defendant Perttu encourages inmates to attack Plaintiff.  In combination with Defendant Perttu's alleged failure to discipline prisoners who attack Plaintiff, Plaintiff alleges that Perttu announced over the public address system in Plaintiff's unit, "[h]ello, you child[-]touching queers.  Cell 229 is a rapist." (*Id.*)  Further, at the time Plaintiff filed his complaint, Defendant Perttu had allegedly announced every morning for nearly two months that "Inmate Richards in [Cell] 239[2] is a pedophile." (*Id.*, PageID.9.)  Plaintiff also alleges that Defendant Perttu gave Plaintiff's mental health file, which described Plaintiff's attraction to children, to other prisoners.

Plaintiff allocates the bulk of his complaint—Claims 3 to 13—to dubious legal arguments describing why he believes that the Defendants violate a panoply of constitutional provisions and international treaties when they prohibit him and others from possessing pornography of choice in general, and child pornography more specifically.  What connections Plaintiff makes between his legal arguments and the Defendants are limited and found within Claims 3 to 6.  As part of Claim 3, Plaintiff alleges that he petitioned Defendants Washington and Taskila to make available more "sexually stimulating materials." (*Id.*, PageID.10.)  In Claims 3 and 4, Plaintiff alleges that Defendants' refusals to provide sexually stimulating materials constitutes torture under the Constitution, federal statutes, and international treaties due to the psychosomatic (Claim 3) and psychosocial (Claim 4) harms.  Plaintiff further argues that because the prison "depriv[es] inmates of necessary outlets to relieve pent up sexual tension" (*id.*, PageID.12), the prison fails to comply with the Prison Rape Elimination Act, 34 U.S.C. §§ 30301–30309 (*id.*, PageID.13).  In Claim 5, Plaintiff contends that Defendants' refusal to provide such

---

[2] Plaintiff allegations imply that he resided in Cell 229 at the time Defendant Perttu made the earlier announcement. Presumably, Plaintiff was moved to Cell 239.

materials also violates his freedom of speech rights provided under the First Amendment and, presumably, the Equal Protection Clause of the Fourteenth Amendment.  Specifically, Plaintiff asserts that MDOC policies that prohibit "pedosexual or pedophiliac publications . . . unlawful[ly] discriminat[e]" based on sexual orientation.  (*Id.*, PageID.15.)  In Claim 6, Plaintiff alleges that Defendants Washington and Taskila have retaliated against him because they told Plaintiff that he may not be granted parole, that he may be kept in administrative segregation, and that he may need to register as a sex offender if he does not renounce pedophilia and his associated political beliefs.

Much of the complaint—claims 7 to 13—has no connection to, or mention of, any of the Defendants.  Instead, Plaintiff challenges the constitutionality of numerous child pornography and obscenity criminal statutes found within Title 18 of the United States Code. Plaintiff asks that the Court issue declaratory judgments finding 18 U.S.C. §§ 1460–1470 and 2250–2260 constitutionally invalid.  (*See* Compl., ECF No. 1, PageID.19–32.)  Plaintiff further requests that the Court "fashion a new rule of law" to "overturn[]" the obscenity test adopted by the United States Supreme Court in *Miller v. California*, 413 U.S. 15 (1973).

To justify these measures, Plaintiff offers several arguments.  First, he alleges that the statutes unlawfully discriminate against those who identify as child lovers, pedophiles, and pedosexuals.  (Compl., ECF No. 1, PageID.19–20.)  Next, Plaintiff alleges that the laws unconstitutionally restrict the rights of youths, including those age 11 to 15 years, from expressing themselves sexually for publication in print or video for commercial purposes.  (*Id.*, PageID.21–22.)  Separately, Plaintiff argues that federal child pornography laws unconstitutionally prohibit youth from engaging in nudism for their own enjoyment.  (*Id.*, PageID.23–24.)  He then contends that, as a Wiccan, child pornography laws prevent him from practicing his religion.

(*Id.*, PageID.25–26.)  He further argues that particular types of child pornography have cultural value to the practice of Wicca, and therefore, that child pornography should satisfy an exception to obscenity and child pornography laws under the *Miller* test.  (*Id.*, PageID.29–30.)  Finally, Plaintiff asserts that the *Miller* test is outdated because it no longer fits social norms, and he asks the Court to fashion a new rule of law.  (*Id.*, PageID.31–32.)  However, Plaintiff does not mention Defendants much less connect them to any of his arguments focused on the challenges to the child pornography and obscenity statutes.

For relief, Plaintiff seeks $930,000 in damages as well as injunctive and declaratory relief.

## II.    Misjoinder

Plaintiff joins four Defendants, each sued in both their personal and official capacities, connecting a series of discrete claims loosely tied together by Plaintiff's self-identification as a child lover, pedosexual, and pedophile.  At this juncture, the Court reviews whether Plaintiff's claims are misjoined.

### A.    Improper Joinder

Federal Rule of Civil Procedure 20(a) limits the joinder of parties in a single lawsuit, whereas Federal Rule of Civil Procedure 18(a) limits the joinder of claims.  Rule 20(a)(2) governs when multiple defendants may be joined in one action: "[p]ersons . . . may be joined in one action as defendants if:  (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action."  Rule 18(a) states:  "A party asserting a claim . . . may join, as independent or alternative claims, as many claims as it has against an opposing party."

7

Courts have recognized that, where multiple parties are named, as in this case, the analysis under Rule 20 precedes that under Rule 18:

> Rule 20 deals solely with joinder of parties and becomes relevant only when there is more than one party on one or both sides of the action.  It is not concerned with joinder of claims, which is governed by Rule 18.  Therefore, in actions involving multiple defendants Rule 20 operates independently of Rule 18. . . .

> Despite the broad language of Rule 18(a), plaintiff may join multiple defendants in a single action only if plaintiff asserts at least one claim to relief against each of them that arises out of the same transaction or occurrence and presents questions of law or fact common to all.

7 Charles Allen Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1655 (3d ed. 2001), *quoted in Proctor v. Applegate*, 661 F. Supp. 2d 743, 778 (E.D. Mich. 2009), *and Garcia v. Munoz*, No. 08-1648, 2008 WL 2064476, at *3 (D.N.J. May 14, 2008); *see also United States v. Mississippi*, 380 U.S. 128, 142–43 (1965) (joinder of defendants is permitted by Rule 20 if both commonality and same transaction requirements are satisfied).

Therefore, "a civil plaintiff may not name more than one defendant in his original or amended complaint unless one claim against each additional defendant is transactionally related to the claim against the first defendant and involves a common question of law or fact."  *Proctor*, 661 F. Supp. 2d at 778 (internal quotation omitted).  When determining if civil rights claims arise from the same transaction or occurrence, a court may consider a variety of factors, including, "'the time period during which the alleged acts occurred; whether the acts . . . are related; whether more than one act . . . is alleged; whether the same supervisors were involved, and whether the defendants were at different geographical locations.'"  *Id.* (quoting *Nali v. Mich. Dep't of Corr.*, No. 07-10831, 2007 WL 4465247, at *3 (E.D. Mich. Dec. 18, 2007)).

Permitting the improper joinder in a prisoner civil rights action also undermines the purpose of the PLRA, which was to reduce the large number of frivolous prisoner lawsuits that

8

were being filed in the federal courts.  *See Riley v. Kurtz*, 361 F.3d 906, 917 (6th Cir. 2004).  Under

the PLRA, a prisoner may not commence an action without prepayment of the filing fee in some

form.  *See* 28 U.S.C. § 1915(b)(1).  These "new fee provisions of the PLRA were designed to deter

frivolous prisoner litigation . . . 'by making all prisoner [litigants] . . . feel the deterrent effect

created by liability for filing fees.'"  *Williams v. Roberts*, 116 F.3d 1126, 1127–28 (5th Cir. 1997)

(quoting *Jackson v. Stinnett*, 102 F.3d 132, 136–37 (5th Cir. 1996)).  The PLRA also contains a

"three-strikes" provision requiring the collection of the entire filing fee after the dismissal for

frivolousness, etc., of three actions or appeals brought by a prisoner proceeding in forma pauperis,

unless the statutory exception is satisfied.  28 U.S.C. § 1915(g).  The "three strikes" provision was

also an attempt by Congress to curb frivolous prisoner litigation.  *See Wilson v. Yaklich*, 148 F.3d

596, 603 (6th Cir. 1998).

          The Seventh Circuit has explained that a prisoner like plaintiff may not join in one

complaint all of the defendants against whom he may have a claim, unless the prisoner satisfies

the dual requirements of Rule 20(a)(2):

> Thus multiple claims against a single party are fine, but Claim A against
> Defendant 1 should not be joined with unrelated Claim B against Defendant 2.
> Unrelated claims against different defendants belong in different suits, not only to
> prevent the sort of morass that [a multi]-claim, [multi]-defendant suit produce[s]
> but also to ensure that prisoners pay the required filing fees—for the Prison
> Litigation Reform Act limits to 3 the number of frivolous suits or appeals that any
> prisoner may file without prepayment of the required fees. 28 U.S.C. § 1915(g) . . . .
>
> A buckshot complaint that would be rejected if filed by a free person—say, a suit
> complaining that A defrauded the plaintiff, B defamed him, C punched him, D
> failed to pay a debt, and E infringed his copyright, all in different transactions—
> should be rejected if filed by a prisoner.

*George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007); *see also Brown v. Blaine*, 185 F. App'x 166,

168–69 (3d Cir. 2006) (allowing an inmate to assert unrelated claims against new defendants based

on actions taken after the filing of his original complaint would have defeated the purpose of the three strikes provision of PLRA); *Patton v. Jefferson Corr. Ctr.*, 136 F.3d 458, 464 (5th Cir. 1998) (declining to allow "litigious prisoners to immunize frivolous lawsuits from the 'three strikes' barrier by the simple expedient of pleading unexhausted habeas claims as components of § 1983 suits"); *Shephard v. Edwards*, No. C2-01-563, 2001 WL 1681145, at *1 (S.D. Ohio Aug. 30, 2001) (declining to consolidate prisoner's unrelated various actions so as to allow him to pay one filing fee, because it "would improperly circumvent the express language and clear intent of the 'three strikes' provision"); *Scott v. Kelly*, 107 F. Supp. 2d 706, 711 (E.D. Va. 2000) (denying prisoner's request to add new, unrelated claims to an ongoing civil rights action as an improper attempt to circumvent the PLRA's filing fee requirements and an attempt to escape the possibility of obtaining a "strike" under the "three strikes" rule).

Plaintiff has already accumulated at least three strikes, but the Court permitted him to proceed with pauper status because at least one claim met the imminent danger of serious physical injury exception to the PLRA's three strikes provision.  Under these circumstances, to allow Plaintiff to proceed with improperly joined claims and Defendants in a single action would permit him to circumvent the PLRA's filing fee provisions.  He would avoid the consequences of filing at least three actions with all claims dismissed as meritless, frivolous, or for failure to state a claim.

Therefore, the Court therefore will look to Plaintiff's claim that satisfied the imminent danger exception to the three strikes rule—that Defendant Perttu encourages other prisoners to assault Plaintiff.[3]  Plaintiff's allegations connect no other Defendant to the transaction

---

[3] Plaintiff also alleges that depriving him of child pornography constitutes torture.  "A physical injury is 'serious' for purposes of § 1915(g) if it has potentially dangerous consequences such as death or severe bodily harm.  Minor harms

10

or occurrence involving Defendant Perttu's alleged encouragement of prisoners to attack Plaintiff. As a result, none of the other Defendants is transactionally related to Plaintiff's principal claim involving Defendant Perttu. Moreover, it is clear that no question of law or fact is common to all Defendants. *See* Fed. R. Civ. P. 20(a)(2)(B). Plaintiff has, therefore, improperly joined Defendants Whitmer, Washington, and Taskila to this action.

### B. Remedy

Under Rule 21 of the Federal Rules of Civil Procedure, "[m]isjoinder of parties is not a ground for dismissing an action." *Id.* Instead, Rule 21 provides two remedial options: (1) misjoined parties may be dropped on such terms as are just; or (2) any claims against misjoined parties may be severed and proceeded with separately. *See Grupo Dataflux v. Atlas Glob. Grp., L.P.*, 541 U.S. 567, 572–73 (2004) ("By now, 'it is well settled that Rule 21 invests district courts with authority to allow a dispensable nondiverse party to be dropped at any time . . . .'") (quoting *Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 832 (1989)); *DirecTV, Inc. v. Leto*, 467 F.3d 842, 845 (3d Cir. 2006); *Carney v. Treadeau*, No. 2:07-cv-83, 2008 WL 485204, at *2 (W.D. Mich. Feb. 19, 2008); *Coal. to Defend Affirmative Action v. Regents of Univ. of Mich.*, 539 F. Supp. 2d 924, 940 (E.D. Mich. 2008); *see also Michaels Bldg. Co. v. Ameritrust Co., N.A.*, 848 F.2d 674, 682 (6th Cir. 1988) ("[D]ismissal of claims against misjoined parties is appropriate."). "Because a district court's decision to remedy misjoinder by dropping and dismissing a party, rather than severing the relevant claim, may have important and potentially adverse statute-of-

---

or fleeting discomfort don't count." *Gresham v. Meden*, 938 F.3d 847, 850 (6th Cir. 2019). The harms he alleges that stem from the child pornography prohibitions do not threaten Plaintiff with death or severe bodily injury. Therefore, his claims related to the deprivation of child pornography do not satisfy the exception to the three strikes rule.

limitations consequences, the discretion delegated to the trial judge to dismiss under Rule 21 is restricted to what is 'just.'" *DirecTV*, 467 F.3d at 845.

At least three judicial circuits have interpreted "on such terms as are just" to mean without "gratuitous harm to the parties." *Strandlund v. Hawley*, 532 F.3d 741, 745 (8th Cir. 2008) (quoting *Elmore v. Henderson*, 227 F.3d 1009, 1012 (7th Cir. 2000)); *see also DirecTV*, 467 F.3d at 845. Such gratuitous harm exists if the dismissed parties lose the ability to prosecute an otherwise timely claim, such as where the applicable statute of limitations has lapsed, or the dismissal is with prejudice. *Strandlund*, 532 F.3d at 746; *DirecTV*, 467 F.3d at 846–47.

In this case, Plaintiff brings causes of action under 42 U.S.C. § 1983 and, purportedly, under international treaties related to civil and human rights. For civil rights suits filed in Michigan under these provisions, the statute of limitations is three years. *See* Mich. Comp. Laws § 600.5805(2); *Carroll v. Wilkerson*, 782 F.2d 44 (6th Cir. 1986) (per curiam); *Stafford v. Vaughn*, No. 97-2239, 1999 WL 96990, at *1 (6th Cir. Feb. 2, 1999). The statute of limitations begins to run when the aggrieved party knows or has reason to know of the injury that is the basis of his action. *Collyer v. Darling*, 98 F.3d 211, 220 (6th Cir. 1996).

The statute of limitations, however, is subject to tolling. The Sixth Circuit has recognized that, in prisoner civil rights actions, the statute of limitations is tolled for the period during which a plaintiff's available state administrative remedies were being exhausted. *See Brown v. Morgan*, 209 F.3d 595, 596–97 (6th Cir. 2000).

> The Prison Litigation Reform Act amended 42 U.S.C. § 1997e to provide: "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a) (1999) . . . . This language unambiguously requires exhaustion as a mandatory threshold requirement in prison litigation.

12

Prisoners are therefore prevented from bringing suit in federal court for the period of time required to exhaust "such administrative remedies as are available." For this reason, the statute of limitations which applied to Brown's civil rights action was tolled for the period during which his available state remedies were being exhausted.

*Id.* at 596 (citing *Harris v. Hegmann*, 198 F.3d 153, 157–59 (5th Cir. 1999) (per curiam), and *Cooper v. Nielson*, 194 F.3d 1316 (9th Cir. 1999)).  The Sixth Circuit noted that, because it could not determine when the period of exhaustion expired, the appropriate remedy was to remand the case to the District Court to "consider and decide the period during which the statute of limitations was tolled and for such other proceedings as may be necessary."  *Id*. at 597.  Furthermore, "Michigan law provides for tolling of the limitations period while an earlier action was pending which was later dismissed without prejudice."  *Kalasho v. City of Eastpointe*, 66 F. App'x 610, 611 (6th Cir. 2003).

Plaintiff's factual allegations against Defendants other than Perttu have occurred since May 2020, well within the three-year period of limitations.  Those claims are not at risk of being time-barred.  Accordingly, the Court will exercise its discretion under Rule 21 and drop Plaintiff's claims against Defendants Whitmer, Washington, and Taskila because they are misjoined and not at risk of being time-barred.  The Court will dismiss without prejudice Plaintiff's complaint against them under Rule 21 of the Federal Rules of Civil Procedure.[4]

## III.    Failure to State a Claim

Plaintiff's complaint against Defendant Perttu must be reviewed under the PLRA to determine if it is frivolous, malicious, or fails to state a claim.  A complaint may be dismissed

---

[4] As fully discussed in this opinion, Plaintiff is cautioned that he must limit all future actions to Defendants and claims that are transactionally related to one another.  The Court may, in its discretion and without further warning, dismiss any future complaint, or part thereof, filed by Plaintiff that contains claims that are misjoined.

for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions.  *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").  The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face."  *Twombly*, 550 U.S. at 570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 679.  Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556).  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'"  *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law.  *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996).  Because § 1983 is a method for vindicating

14

federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

## IV.     Claims 1 and 2

Plaintiff alleges that Defendant Perttu has been deliberately indifferent to Plaintiff's safety and well-being by encouraging other prisoners to attack Plaintiff and failing to discipline prisoners when they did attack Plaintiff.  Plaintiff purports that Defendant Perttu's conduct violated the Eighth and Fourteenth Amendments as well as what he identifies as two international treaties: the Universal Declaration of Human Rights (UDHR) and the Convention Against Torture and Other Forms of Cruel, Inhuman or Degrading Treatment or Punishment (CAT).[5]

### A.     Eighth Amendment

The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes.  Punishment may not be "barbarous" nor may it contravene society's "evolving standards of decency."  *Rhodes v. Chapman*, 452 U.S. 337, 345–46 (1981).  The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain."  *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346).  The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities."  *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600–01 (6th Cir. 1998).  The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for

---

[5] Plaintiff refers to the "International Convention Against Inhumane Degrading Treatment of Prisoners and Torture." The Court has been unable to find any such international agreement. The Court presumes, therefore, that Plaintiff intends to refer to the Convention Against Torture and Other Forms of Cruel, Inhuman or Degrading Treatment or Punishment.

prison confinement."  *Rhodes*, 452 U.S. at 348 (citation omitted).  Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment."  *Ivey*, 832 F.2d at 954.

Upon initial review, the Court determines that Plaintiff has alleged facts sufficient to state an Eighth Amendment Claim against Defendant Perttu.

**B.    Fourteenth Amendment**

Plaintiff's Fourteenth Amendment claim appears to be grounded in his belief that prisoners who have attacked him because he identifies as a BCL, pedophile, and pedosexual should be prosecuted for hate crimes, yet these prisoners have not been charged.  Plaintiff is essentially alleging that Defendant Perttu violated his constitutional rights by failing to pursue an investigation and criminal prosecution of Plaintiff's attackers.  A private citizen "lacks a judicially cognizable interest in the prosecution or nonprosecution of another."  *Diamond v. Charles*, 476 U.S. 54, 64 (1986).  Simply put, Plaintiff cannot compel a criminal prosecution because private citizens, whether or not they are incarcerated, cannot compel a criminal prosecution of another.  *See Diamond v. Charles*, 476 U.S. 54, 64–65 (1986); *Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973); *Martin v. Koljonen*, No. 03-2169, 2004 WL 445720, at *1 (6th Cir. Mar. 9, 2004). Therefore, Plaintiff fails to state a Fourteenth Amendment claim against Defendant Perttu.

**C.    UDHR and CAT**

Although Plaintiff purports to bring his claims under both the UDHR and CAT, he has not articulated on what basis he believes Defendant Perttu—or any of the other Defendants—has violated either international agreement.  Indeed, Plaintiff cannot.  The Supreme Court has determined that the UDHR is merely aspirational and "does not of its own force impose obligations as a matter of international law."  *Sosa v. Alvarez-Machain*, 542 U.S. 692, 734 (2004); *see also*

16

*Ruhaak v. Comm'r of Internal Revenue*, 422 F. App'x 530, 532 (7th Cir. 2011) ("And the Universal Declaration of Human Rights is a statement of principles and not a treaty or international agreement imposing legal obligations."). Thus, the UDHR does not provide Plaintiff a cause of action. Further, Plaintiff "has no cause of action under the [CAT] because it is not self-executing." *Renkel v. United States*, 456 F.3d 640 (6th Cir. 2006); *see also Nasrallah v. Barr*, 140 S. Ct. 1683, 1694–95 (2020) (Thomas, J., dissenting) (describing history of the adoption and approval of the CAT by the Senate). Accordingly, Plaintiff is unable to sustain a claim under either the UDHR or the CAT.

## V.     Claims 3 to 13

To the extent Plaintiff attempts to bring a claim against Defendant Perttu within Claims 3 to 13 of the complaint, he fails to state a claim. It is a basic pleading essential that a plaintiff attribute factual allegations to particular defendants. *See Twombly*, 550 U.S. at 544 (holding that, in order to state a claim, a plaintiff must make sufficient allegations to give a defendant fair notice of the claim). Where a person is named as a defendant without an allegation of specific conduct, the complaint is subject to dismissal, even under the liberal construction afforded to *pro se* complaints. *See Gilmore v. Corr. Corp. of Am.*, 92 F. App'x 188, 190 (6th Cir. 2004) (dismissing complaint where plaintiff failed to allege how any named defendant was involved in the violation of his rights); *Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (dismissing plaintiff's claims where the complaint did not allege with any degree of specificity which of the named defendants were personally involved in or responsible for each alleged violation of rights); *Griffin v. Montgomery*, No. 00-3402, 2000 WL 1800569, at *2 (6th Cir. Nov. 30, 2000) (requiring allegations of personal involvement against each defendant); *Rodriguez v. Jabe*, No. 90-1010, 1990 WL 82722, at *1 (6th Cir. June 19, 1990) ("Plaintiff's claims

17

against those individuals are without a basis in law as the complaint is totally devoid of allegations as to them which would suggest their involvement in the events leading to his injuries.").

Plaintiff mentions Defendant Perttu only twice within the entire span of Claims 3 to 13. Plaintiff's allegations are entirely void of specific conduct. Instead, his mention of Defendant Perttu occurs in a list of all Defendants, in which he makes a conclusory claim that all Defendants are responsible for the alleged violations stated in those claims. "Summary reference to a single, five-headed 'Defendants' does not support a reasonable inference that each Defendant is liable for retaliation." *Boxill v. O'Grady*, 935 F.3d 510, 518 (6th Cir. 2019) (citing *Heyne v. Metro. Nashville Pub. Sch.*, 655 F.3d 556, 564 (6th Cir. 2011) ("This Court has consistently held that damage claims against government officials arising from alleged violations of constitutional rights must allege, with particularity, facts that demonstrate what each defendant did to violate the asserted constitutional right.") (quoting *Lanman v. Hinson*, 529 F.3d 673, 684 (6th Cir. 2008))). Plaintiff alleges no facts about Defendant Perttu's conduct in Claims 3 to 13. Plaintiff's allegations against Defendant Perttu found in Claims 3 to 13 therefore fall far short of the minimal pleading standards under Fed. R. Civ. P. 8 (requiring "a short and plain statement of the claim showing that the pleader is entitled to relief"). As a consequence, Plaintiff's claims against Defendant Perttu in Claims 3 to 13 must be dismissed.

## VI.    Class Certification

Plaintiff indicates that he intends his complaint to serve as the basis for a class action against Defendants. He further requests that the Court certify three classes: (1) persons convicted of crimes related to child pornography who have been discriminated against or denied safety while in prison; (2) Queer individuals who identify as a child lovers, pedosexuals, or pedophiles and have been threatened, assaulted, or harassed based on their sexual orientation; and

18

(3) Queer individuals who identify as a child lovers, pedosexuals, or pedophiles who have been

discriminated against or denied services in prison based on their sexual orientation.

      The purpose of class action suits are judicial economy and the opportunity to bring

claims that would not be brought absent the class action because it might not be economically

feasible to bring them as individual claims.  *See Reeb v. Ohio Dep't of Rehab. & Corr.*, 435 F.3d

639, 650 (6th Cir. 2006).  Federal Rule of Civil Procedure 23, which governs class certification,

provides that:

> One or more members of a class may sue . . . as representative parties on behalf of
> all only if (1) the class is so numerous that joinder . . . is impracticable; (2) there
> are questions of law or fact common to the class; (3) the claims or defenses of the
> representative parties are typical of the claims or defenses of the class; and (4) the
> representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P.  23(a).  The four prerequisites for class certification are respectively referred to as

"numerosity, commonality, typicality, and adequacy of representation."  *Shady Grove Orthopedic*

*Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 398 (2010); *see also Daffin v. Ford Motor Co.*,

458 F.3d 549 (6th Cir. 2006); *Reeb*, 435 F.3d at 645; *Golden v. City of Columbus*, 404 F.3d 950,

965 (6th Cir. 2005); *Coleman v. Gen. Motors Acceptance Corp.*, 296 F.3d 443, 446 (6th Cir. 2002).

If the requirements of Rule 23(a) are met, the person seeking class certification must also establish

that the case satisfies one of the three types of class actions set forth in Rule 23(b).  *Alkire v. Irving*,

330 F.3d 802, 820 (6th Cir. 2003).  The first type of case maintainable as a class action is one in

which separate actions by individual class members would risk establishing "incompatible

standards of conduct for the party opposing the class," or would "be dispositive of the interests"

of nonparty class members.  Fed. R. Civ. P.  23(b)(1)(A) and (B).  The second type of class action

requires that the plaintiffs primarily seek injunctive or declaratory relief.  Fed. R. Civ. P. 23(b)(2).

The third type of class action requires that "the court finds that the questions of law or fact common

19

to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3); *see also Alkire*, 330 F.3d at 820.

The plaintiff bears the burden of establishing the right to class certification. *See In re Am. Med. Sys.*, 75 F.3d 1069, 1086 (6th Cir. 1996). The court's discretion in deciding whether to certify a class must be exercised within the framework of Rule 23. *Id.* at 1079 (citations omitted). Before certifying a class, the court must conduct a "rigorous analysis" of whether Rule 23 prerequisites are met. *Gen. Tel. Co. of the Southwest v. Falcon*, 457 U.S. 147, 161 (1982). In making its analysis, the court may not consider the merits of the case, *see Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 178 (1974), but must accept the allegations of the complaint as true and resolve doubts in favor of the plaintiffs. *See Cross v. Nat'l Tr. Life Ins. Co.*, 553 F.2d 1026, 1029 (6th Cir. 1977). The court may draw reasonable inferences from the facts before it. *See Senter v. Gen. Motors Corp.*, 532 F.2d 511, 520 (6th Cir. 1976).

For a case to proceed as a class action, the court must be satisfied on a number of grounds, including the adequacy of class representation. *See* Fed. R. Civ. P. 23(a)(4). It is well established that *pro se* litigants are inappropriate representatives of the interests of others. *See Garrison v. Mich. Dep't of Corr.*, 333 F. App'x 914, 919 (6th Cir. 2009) (citing *Oxendine v. Williams*, 509 F.2d 1405, 1407 (4th Cir. 1975)); *see also Dodson v. Wilkinson*, 304 F. App'x 434, 438 (6th Cir. 2008); *Ziegler v. Michigan*, 59 F. App'x 622, 624 (6th Cir. 2003); *Palasty v. Hawk*, 15 F. App'x 197, 200 (6th Cir. 2001); *Howard v. Dougan*, No. 99-2232, 2000 WL 876770, at *1 (6th Cir. June 23, 2000). Because Plaintiff is an incarcerated *pro se* litigant, the Court finds that he is not an appropriate representative of a class. Therefore, the Court will deny Plaintiff's request for class certification.

## VII.    Pending Motions

Plaintiff has also filed multiple motions related to this action.

### A.    Appointment of Counsel

Plaintiff has also requested appointment of counsel to represent him in this action. (ECF Nos. 7, 17.)  Indigent parties in civil cases have no constitutional right to a court-appointed attorney.  *Abdur-Rahman v. Mich. Dep't of Corr.*, 65 F.3d 489, 492 (6th Cir. 1995); *Lavado v. Keohane*, 992 F.2d 601, 604–05 (6th Cir. 1993).  The Court may, however, request an attorney to serve as counsel, in the Court's discretion.  *Abdur-Rahman*, 65 F.3d at 492; *Lavado*, 992 F.2d at 604–05; *see also Mallard v. U.S. Dist. Court*, 490 U.S. 296 (1989).

Appointment of counsel is a privilege that is justified only in exceptional circumstances.  In determining whether to exercise its discretion, the Court should consider the complexity of the issues, the procedural posture of the case, and Plaintiff's apparent ability to prosecute the action without the help of counsel.  *See Lavado*, 992 F.2d at 606.  The Court has carefully considered these factors and determines that, at this stage of the case, the assistance of counsel does not appear necessary to the proper presentation of Plaintiff's position.  Indeed, notwithstanding Plaintiff's argument in favor of appointment, he has been an active litigant who has demonstrated that he is highly capable of presenting his position.  Therefore, the Court will deny Plaintiff's motions for appointment of counsel at this juncture.

### B.    Expedite Screening

Plaintiff has also filed a motion requesting that the Court expedite screening. Despite delays, the Court has now screened the complaint.  The Court will therefore deny Plaintiff's motion (ECF No. 8) as moot.

### C.      Recusal and Venue

In his fourth pending motion (ECF No. 15), Plaintiff asks to transfer the case to the Eastern District of Michigan, because Defendant Perttu claims to have told Plaintiff that he had spoken to "the presiding judge," has developed a relationship with said judge, and that the said judge had told Perttu that the case would be dismissed.[6]  In addition, Defendant Perttu allegedly told Plaintiff that he personally knew the other judges in this district and that MDOC officials work closely with this Court.  Plaintiff claims that, in light of the ex parte communications and the relationships between Defendant Perttu and this Court, disqualification of the undersigned and transfer of venue are required.

Under 28 U.S.C. § 455(a), "[a]ny justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned."  The provision requires a judge to *sua sponte* recuse himself if he knows of facts that would undermine the appearance of impartiality.  *Youn v. Track, Inc.*, 324 F.3d 409, 422–23 (6th Cir. 2003); *Liteky v. United States*, 510 U.S. 540, 547–48 (1994).  In addition, 28 U.S.C. § 144 requires that "[w]henever a party to any proceeding in a district court makes and files a timely and sufficient affidavit that the judge before whom the matter is pending has a personal bias or prejudice either against him or in favor of any adverse party, such judge shall proceed no further therein, but another judge shall be assigned to hear such proceeding."  An affidavit filed under § 144 must "allege[ ] facts which a reasonable person would believe would indicate a judge has a personal bias against the moving party."  *Gen. Aviation, Inc. v. Cessna Aircraft Co.*, 915 F.2d 1038, 1043 (6th Cir. 1990).  The alleged bias must "stem from an extrajudicial source and result

---

[6] The instant action was reassigned from United States District Judge Maloney to the undersigned shortly after Plaintiff filed his motion.  (*See* ECF No. 29 (citing W.D. Mich. Admin. Or. No. 20-CA-071).)  Plaintiff's references to "the presiding judge," therefore do not refer to the undersigned.

in an opinion on the merits on some basis other than what the judge learned from his participation in the case." *United States v. Grinnell Corp.*, 384 U.S. 563, 583 (1966). Extrajudicial conduct encompasses only "personal bias as distinguished from a judicial one, arising out of the judge's background and association and not from the judge's view of the law." *Youn*, 324 F.3d at 423 (internal quotation marks omitted). "Personal" bias is prejudice that emanates from some source other than participation in the proceedings or prior contact with related cases. *Id.* (citing *Wheeler v. Southland Corp.*, 875 F.2d 1246, 1251–52 (6th Cir. 1989)); *Demjanjuk v. Petrovsky*, 776 F.2d 571, 577 (6th Cir. 1985)).

Notwithstanding Plaintiff's allegations about what Defendant Perttu might have told him, this Court has no personal relationship with Defendant Perttu or any other MDOC official. Indeed, Plaintiff's action was reassigned from Judge Maloney to the undersigned for unrelated reasons while this motion was pending. The undersigned has never engaged in any ex parte discussions concerning Plaintiff's lawsuits with any state official. Because the Court has no bias against Plaintiff, disqualification is unwarranted. Additionally, because Plaintiff's motion to transfer venue is wholly dependent on his unsubstantiated claim of judicial bias, the motion will be denied.

### D. Preliminary Injunction and Freezing Federal Aid

Plaintiff has filed a motion for a preliminary injunction specifically requesting an order to freeze federal aid to the State of Michigan. (ECF No. 16.)

As a preliminary matter, Plaintiff has failed to demonstrate that the injunctive relief he seeks is available to him. Where preliminary injunctive relief is available, it "must be narrowly drawn, extend no further than necessary to correct the harm the court finds requires preliminary relief, and be the least intrusive means necessary to correct that harm." 18 U.S.C. § 3626(a)(2). After initial screening, Defendant Perttu is the only Defendant who remains in the case. Yet,

23

Plaintiff seeks injunctive relief against a non-party—the United States.  The relief he requests is extraordinarily intrusive, attempts to control the United States in its direction of funds to the State of Michigan, and would cause drastic harm to the State of Michigan.  The relief requested in Plaintiff's motion, therefore, utterly fails to comply with the strictures of § 3626(a)(2).

Moreover, preliminary injunctions are "one of the most drastic tools in the arsenal of judicial remedies."  *Bonnell v. Lorenzo*, 241 F.3d 800, 808 (6th Cir. 2001) (quoting *Hanson Trust PLC v. ML SCM Acquisition Inc.*, 781 F.2d 264, 273 (2d Cir. 1986)).  The issuance of preliminary injunctive relief is committed to the discretion of the district court.  *See Ne. Ohio Coal. v. Blackwell*, 467 F.3d 999, 1009 (6th Cir. 2006); *Nader v. Blackwell*, 230 F.3d 833, 834 (6th Cir. 2000).   In exercising that discretion, a court must consider whether plaintiff has established the following elements: (1) a strong or substantial likelihood of success on the merits; (2) the likelihood of irreparable injury if the preliminary injunction does not issue; (3) the absence of harm to other parties; and (4) the protection of the public interest by issuance of the injunction. *Id.*  These factors are not prerequisites to the grant or denial of injunctive relief, but factors that must be "carefully balanced" by the district court in exercising its equitable powers.  *Frisch's Rest., Inc. v. Shoney's, Inc.*, 759 F.2d 1261, 1263 (6th Cir. 1985); *see also S. Galzer's Distribs. of Ohio, LLC v. Great Lakes Brewing Co.*, 860 F.3d 844, 849 (6th Cir. 2017) ("[T]hese are factors to be balanced, not prerequisites to be met."); *Nat'l Viatical, Inc. v. Universal Settlements Int'l, Inc.*, 716 F.3d 952, 956 (6th Cir. 2013) (same); *Ne. Ohio Coal.*, 467 F.3d at 1009 (same).  "But even the strongest showing on the other three factors cannot 'eliminate the irreparable harm requirement.'"  *D.T. Sumner Cnty. Sch.*, 942 F.3d 324, 326–27 (6th Cir. 2019) (quoting *Friendship Materials, Inc. v. Mich. Brick, Inc.*, 679 F.2d 100, 105 (6th Cir. 1982)).

Additionally, the party seeking injunctive relief bears a heavy burden of establishing that the extraordinary and drastic remedy sought is appropriate under the circumstances.  *See Overstreet v. Lexington-Fayette Urban Cnty. Gov't*, 305 F.3d 566, 573 (6th Cir. 2002); *Stenberg v. Cheker Oil Co.*, 573 F.2d 921, 925 (6th Cir. 1978).  Preliminary injunctions are not favored, even if a plaintiff has shown likelihood of success on the merits.  *Benisek v. Lamone*, ___ U.S. ___, 138 S. Ct. 1942, 1943–44 (2018).

Under controlling Sixth Circuit authority, Plaintiff's "initial burden" in demonstrating entitlement to preliminary injunctive relief is a showing of a strong or substantial likelihood of success on the merits of his section 1983 action.  *NAACP v. Mansfield*, 866 F.2d 162, 167 (6th Cir. 1989).  Plaintiff has not made such a showing.  It is not at all clear from Plaintiff's *pro se* complaint or subsequent filings that Plaintiff has a substantial likelihood of success on his Eighth Amendment claim.  Although the Court makes no final determination on this issue, it appears at this preliminary stage that Plaintiff has not made a substantial showing of a violation of any of his constitutional rights.

Second, the presence of irreparable harm is not evident.  Plaintiff has offered no explanation how halting federal funds to the State would diminish the threat of harm to him.  Therefore, Plaintiff has not set forth specific facts showing an immediate, concrete, and irreparable harm in the absence of an injunction.

Finally, the interests of identifiable third parties and the public at large weigh heavily against an injunction.  Decisions concerning the disbursement of federal benefits authorized by federal law are vested in the Executive Branch.  Any interference by the federal courts in the administration of such benefits is necessarily disruptive.  Furthermore, the State clearly would be harmed by the loss of those benefits.  Because the federal benefits Plaintiff seeks

to stop would ultimately be used to serve the public interest, issuance of an injunction would necessarily undermine public interest rather than protect it.

Accordingly, the Court will deny Plaintiff's motion.

**E.    Declaratory Ruling on Foreign Law**

Plaintiff's motion asks for a "declaratory ruling on application and interpretation of foreign law" because he alleges that the "preliminary questions of law" regarding two purported treaties "are pertinent to the conduct of pretrial and discovery."  (ECF No. 18.)  Plaintiff asserts that he brings his motion pursuant to Rule 44.1 of the Federal Rules of Civil Procedure.  His motion is styled as five questions taking up eight pages of single-spaced text.

Under the relevant portion of Rule 44.1, "[a] party who intends to raise an issue about a foreign country's law must give notice by a pleading or other writing."  Fed. R. Civ. P. 44.1.  Plaintiff's motion is utterly defective for several reasons.

First, the rule functions not as an opportunity to ask for the Court to issue declaratory rulings in response to a plaintiff's questions but to give notice to the Court and litigants that a foreign law is relevant to claims in the lawsuit.  *See* 9A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2443 (3d ed. Oct. 2020 Update).  Plaintiff's request for declaratory rulings is, therefore, wholly misplaced.

Moreover, any treaties made and entered into by the United States are not foreign law under Rule 44.1.  Rule 44.1 applies when "[a] party intends to raise an issue of a *foreign country's* law . . . ."  Fed. R. Civ. P. 44.1 (emphasis added).  Yet, "all Treaties made, or which shall be made, under the Authority of the United States, shall be the supreme Law of the Land." U.S. Const. art. VI.  Thus, to the extent Plaintiff invokes purported treaties with self-executing

provisions,[7] *see Medellin v. Texas*, 552 U.S. 491, 504 (2008) (citing *Foster v. Neilson*, 27 U.S. (2 Pet.) 253, 315 (1829)), his motion would again be misplaced.  Those treaty provisions would have the effect of domestic law.  The provisions would not be law of a foreign country.  Consequently, Rule 44.1 would not and does not apply.

Finally, as fully discussed above, to the extent Plaintiff seeks a cause of action either in the UDHR or CAT his claims fail because neither is enforceable.

Accordingly, the Court will deny Plaintiff's motion.

## F.    Federal Investigation and Monitoring

Plaintiff has filed a motion requesting a federal investigation and further requesting ongoing monitoring.  (ECF No. 25.)  Plaintiff justifies his request with assertions that Defendant Perttu and non-party Officer Hill have allegedly altered Plaintiff's filings and that non-party MDOC employee Sandin may enter an appearance in this case on Plaintiff's behalf.

The Court has carefully reviewed Plaintiff's filings and found nothing to suggest that they have been fraudulently altered by Defendant Perttu or Officer Hill.  Moreover, neither MDOC employee Sandin nor anyone else has attempted to enter an appearance on Plaintiff's behalf.  Absent any evidence validating Plaintiff's dubious allegations, the Court will deny his motion.

## G.    Objection and Reconsideration

Upon discovering that Plaintiff had co-opted the authority of the Court by serving subpoenas soliciting child pornography and that he abused the process by attempting to serve a subpoena on a Foreign Sovereign before his complaint was screened, the Court issued an order

---

[7] Treaties entered into by the United States that do not have self-executing provisions are simply compacts with foreign nations and "'can only be enforced pursuant to legislation to carry them into effect.'"  *Medellin v. Texas*, 552 U.S. 491, 505 (2008) (quoting *Whitney v. Robertson*, 124 U.S. 190, 194 (1888)).

quashing those subpoenas and issuing Plaintiff sanctions under Rule 45.  (ECF No. 48.)  Plaintiff has filed an objection (ECF No. 49) and motion for reconsideration (ECF No. 55).

Under Rule 54(b) of the Federal Rules of Civil Procedure, a non-final order is subject to reconsideration at any time before entry of a final judgment.  *Id.*; *see also ACLU v. McCreary Cnty.*, 607 F.3d 439, 450 (6th Cir. 2010).  Western District of Michigan Local Civil Rule 7.4(a) provides that "motions for reconsideration which merely present the same issues ruled upon by the court shall not be granted."  Further, reconsideration is appropriate only when the movant "demonstrate[s] a palpable defect by which the court and the parties have been misled . . . [and] that a different disposition of the case must result from a correction thereof."  *Id.*

Upon review and for the reasons previously set forth, this Court finds no error in its order, and Plaintiff's Objection and Motion for Reconsideration fails to meet the standard set forth by Rule 7.4(a).  Accordingly, the Court will deny Plaintiff's objection (ECF No. 49) and motion for reconsideration (ECF No. 55).

## <u>Conclusion</u>

Having conducted the review under Rule 21 of the Federal Rules of Civil Procedure, the Court determines that Defendants Whitmer, Washington, and Taskila will be dropped from this action.  Plaintiff's claims against these Defendants will be dismissed without prejudice.

Having further performed the review required by the PLRA, the Court will also dismiss, for failure to state a claim, all claims against Defendant Perttu except for those Eighth Amendment claims identified below.  *See* 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).  Plaintiff's Eighth Amendment claims against Defendant Perttu, specifically related to the encouragement of prisoners to attack Plaintiff, remain in the case.

An order consistent with this opinion will be entered.


Dated:   <u>February 4, 2021</u>                     <u> /s/ Hala Y. Jarbou                    </u>
                                                    HALA Y. JARBOU
                                                    UNITED STATES DISTRICT JUDGE