UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN

KYLE RICHARDS #641715,
KENNETH PRUITT #708518, and
ROBERT KISSEE #575639,

 NO. 2:20-cv-76

 Plaintiff,

 HON. HALA Y. JARBOU

v MAG. MAARTEN VERMAAT

THOMAS PERTTU,

 Defendant.

_____

KYLE B. RICHARDS #641715,

 Plaintiff, NO. 2:20-cv-122

v HON. HALA Y. JARBOU

THOMAS PERTTU, MAG. MAARTEN VERMAAT

 Defendant.

_____

KYLE B. RICHARDS #641715,
KENNETH PRUITT #708518, and
ROBERT KISSEE #575639, NO. 2:20-cv-194

 Plaintiffs, HON. PAUL L. MALONEY

v MAG. MAARTEN VERMAAT

KRISTOPHER TASKILA, THOMAS
PERTTU, and STEVE NIEMI,

 Defendants.

_____

Kyle B. Richards #641715
*In Pro Per*
Baraga Correctional Facility
13924 Wadaga Rd.
Baraga, MI 49908-9204

Kenneth D. Pruitt #708518
*In Pro Per*
Baraga Correctional Facility
13924 Wadaga Road
Baraga, MI 49908-9204

Joseph Y. Ho (P77390)
Assistant Attorney General
Attorney for MDOC Defendants
 Taskila, Perttu & Niemi
Mich. Dep't of Attorney General
MDOC Division
P.O. Box 30217
Lansing, MI 48909
(517) 335-3055
hoj@michigan.gov

Robert L. Kissee #575639
*In Pro Per*
Macomb Correctional Facility
34625 26 Mile Road
Lenox Township, MI 48048

_____/

## MDOC DEFENDANTS' TRIAL BRIEF

In the three above-captioned cases, Plaintiffs Kyle Richards, Kenneth Pruitt, and Robert Kissee bring claims against MDOC Defendants Kristopher Taskila, Thomas Perttu, and Steve Niemi for various incidents occurring between June 2019 and July 2020 at the Baraga Correctional Facility (AMF) in Baraga, Michigan. Before the Court is the limited issue of whether Plaintiffs exhausted the administrative remedies of their claims under either MDOC's three-step (regular) grievance process or MDOC's two-step Prison Rape Elimination Act (PREA) grievance process.

Plaintiffs argue that MDOC Defendant Perttu prevented them from exhausting their claims by intercepting and destroying their regular and PREA grievances on multiple occasions.  Richards also argues that he exhausted some of his claims through the regular grievance process.  MDOC Defendants will demonstrate that both the regular and PREA grievance processes were available to all Plaintiffs, that they were not prevented from using the regular and PREA grievance process, and that whatever grievances they pursued did not exhaust any of their remaining claims.

## I.    Issues of fact to be proven at trial

MDOC Defendants will call MDOC Grievance Manager Richard Russell, who will testify regarding the procedures a prisoner must follow to exhaust grievable claims through the MDOC grievance process and to exhaust claims relating to misconduct hearings through the misconduct hearing process.  Russell will review the Plaintiffs' Step III Report, which tracks all of the grievances received at Step III of the grievance process.  (Defs.' Exs. C1, D1 & E1.)  Russell will testify that Plaintiffs did not pursue through Step III any grievances relating to the remaining claims.

AMF Grievance Coordinator Thomas Hamel will testify as to how he processes grievances at AMF.  Hamel will describe the availability of grievance forms and that if he had received a grievance from any of the Plaintiffs then he would have logged it, assigned it a grievance number, and processed it in the same way he processed them for every prisoner.  Hamel will discuss how he processes regular grievances which contain PREA allegations.  Hamel will review the Plaintiffs' AMF Grievance Summary Report, which tracks all of the Step I and II grievances received at AMF.  (Defs.' Exs. C2, D2 & E2.)

AMF Inspector Craig Cummings will testify as to how he processes PREA grievances at AMF.  Cummings will describe the availability of PREA grievance forms and that if he had received a PREA grievance from any of the Plaintiffs then he would have logged it, assigned it a grievance number, and processed it in the same way he processed them for every prisoner.  Cummings will discuss how he processes PREA grievances which contain non-PREA allegations.  Cummings will

review the search results when he searched the Administration Investigation

Management (AIM) database for PREA grievances filed by Plaintiffs.  (Defs.' Exs.

C3, D3 & E3.)

## II.    Issues of law

Before the Court is the limited issue of whether Plaintiffs exhausted their

administrative remedies of his claims against MDOC Defendants.  Under 42 U.S.C.

§ 1997e(a), a prison inmate cannot maintain a civil rights action with respect to

prison conditions brought under any federal law if he did not first exhaust all

available administrative remedies.  The Supreme Court has held that exhaustion

requires proper exhaustion, which means that the prisoner must complete the

administrative review process.  *Woodford v. Ngo*, 548 U.S. 81, 88 (2006).  "[P]roper

exhaustion of administrative remedies . . . means using all steps that the agency

holds out, and doing so properly (so that the agency addresses the issues on the

merits)."  *Id.* at 90 (quotation omitted).  Exhaustion of administrative remedies is a

prerequisite to filing a prisoner lawsuit challenging prison conditions.  42 U.S.C.

§ 1997e(a); *Porter v. Nussle*, 534 U.S. 516, 524 (2002).  "The level of detail necessary

in a grievance to comply with the grievance procedures will vary from system to

system and claim to claim, but it is the prison's requirements, and not the PLRA,

that define the boundaries of proper exhaustion."  *Jones v. Bock*, 549 U.S. 199, 219

(2007).

## A.    Exhaustion under MDOC's regular grievance process

The administrative process applicable to Plaintiffs' non-PREA claims is

governed by MDOC Policy Directive 03.02.130, "Prisoner/Parolee Grievances"

(effective date 03/18/2019).  The policy directive states, in pertinent part, as follows:

> F. Grievances may be submitted regarding alleged violations of policy or procedure or unsatisfactory conditions of confinement that personally affect the grievant, including alleged violations of this policy and related procedures.
>
> * * *
>
> Q. Prior to submitting a written grievance, the grievant shall attempt to resolve the issue with the staff member involved within two business days after becoming aware of a grievable issue, unless prevented by circumstances beyond his/her control or if the issue is believed to fall within the jurisdiction of Internal Affairs.  If the issue is not resolved, the grievant may file a Step I grievance.  The Step I grievance must be filed within five business days after the grievant attempted to resolve the issue with appropriate staff.
>
> * * *
>
> T. Grievances and grievance appeals at all steps shall be considered filed on the date received by the Department.  All grievances and appeals shall be date stamped upon receipt. . . .
>
> * * *
>
> W. Within five business days after attempting to resolve a grievable issue with staff, a grievant wishing to advance a grievance must send a completed Prisoner/Parolee Grievance form (CSJ-247A) to the Step I Grievance Coordinator designated for the facility or other office being grieved. . . .
>
> X. The Grievance Coordinator shall log and assign a unique identifying number to each Step I grievance received, including those that may be rejected.  A computerized grievance tracking system shall be used for this purpose.
>
> Y. After receipt of the grievance, the Grievance Coordinator shall determine if the grievance should be rejected pursuant to this policy. If the grievance is rejected, the grievance response shall state the

reason for the rejection without addressing the merits of the grievance.
. . .

* * *

DD. A grievant may file a Step II grievance if s/he is dissatisfied with
the response received at Step I or if s/he did not receive a timely
response.  To file a Step II grievance, the grievant must request a
Prisoner/Parolee Grievance Appeal (CSJ-247B) from the Step I
Grievance Coordinator and send the completed form to the Step II
Grievance Coordinator designated for the facility, field office, or other
office being grieved within ten business days after receiving the Step I
response or, if no response was received, within ten business days after
the date the response was due, including any extensions.  If the office
being grieved does not have a designated Grievance Coordinator, the
grievant is to send the grievance to the Step II Grievance Coordinator
for the facility in which s/he is housed.

EE. The Grievance Coordinator shall log each Step II grievance
received, including those that may be rejected.  The Grievance
Coordinator shall use a computerized grievance tracking system to do
so.  The Grievance Coordinator shall determine if the grievance should
be rejected pursuant to this policy.  If the grievance is rejected, the
grievance response shall state the reason for the rejection <u>without
addressing the merits of the grievance</u>.  If accepted, the Grievance
Coordinator shall assign an appropriate respondent and indicate the
date by which the response is due.  The due date shall be within 15
business days after receipt of the grievance, unless an extension is
granted as set forth in Paragraph T.

* * *

HH. A grievant may file a Step III grievance if s/he is dissatisfied with
the Step II response or does not receive a timely response.  To file a
Step III grievance, the grievant must send a completed
Prisoner/Parolee Grievance Appeal form (CSJ-247B) to the Grievance
Section within ten business days after receiving the Step II response
or, if no response was received, within ten business days after the date
the response was due, including any extensions.

II. The Grievance Section shall be the respondent for Step III
grievances on behalf of the Director.  Each grievance received at Step
III, including those that may be rejected, shall be logged on a
computerized grievance tracking system. The tracking system shall
include information on the subject matter of each grievance received

and, for rejected grievances, the basis for the rejection.  The Grievance Section shall forward grievances regarding clinical issues to the Administrator of the BHCS.  The BHCS Administrator shall ensure the referred grievance is investigated and a response is provided to the Grievance Section in a timely manner.  The Manager of the Grievance Section shall ensure that any additional investigation is completed as necessary for each Step III grievance accepted, including referral to the Internal Affairs and, for disability issues, to the Equal Employment Opportunity Office, as appropriate, and that a copy of the Step III response is provided to the grievant. Generally, Step III responses will be responded to within 60 business days.  The Step III response is final.

## B.    Exhaustion under MDOC's PREA grievance process

The administrative process applicable to claims of sexual abuse, harassment, or misconduct is governed by MDOC P.D. 03.03.140, "Prison Rape Elimination Act (PREA) and Prohibited Sexual Conduct Involving Prisoners," (effective date 04/24/2017).  The policy directive states, in pertinent part, as follows:

> EE. The PREA Grievance process is a two-step process allowing prisoners to grieve regarding allegations of sexual abuse.  A prisoner may file a PREA Grievance at Step I, and may appeal the Step I decision to Step II. The Step II decision shall serve as the Department's final decision on the merits of the PREA Grievance. Issues filed by prisoners regarding sexual abuse, as defined in this policy, serve to exhaust the prisoner's administrative remedies only when filed through both steps of the PREA grievance process.  PREA Grievances alleging sexual abuse shall not be denied or rejected.

> FF. Prisoners shall use the PREA Prisoner Grievance Form (Step I) (CAJ-1038A) to file a PREA Grievance.  The form may be completed by hand or typewritten.  However, handwriting must be legible. The issues should be stated briefly but concisely.  Information provided should be limited to the facts involving the issues being grieved (i.e., who, what, when, where, why and how).  Dates, times, places and names of all those involved should be included. Information should be confined to the form and not written on the back, sides or margins of the form, or in the area provided for a response. Additional pages may be attached to the grievance form if necessary to provide required information.  If additional pages are necessary, the prisoner must submit four copies of each additional page.

GG. A prisoner may file a PREA grievance at any time by submitting a completed CAJ-1038A to the appropriate staff, as identified by the warden, of the institution at which the prisoner is housed.  Prisoners are not required to use any informal grievance process, or to otherwise attempt to resolve with staff an alleged incident of sexual abuse.

HH. Staff shall log and assign a unique identifying number (facility code – year – month - AIM number - PREA) to each Step I PREA grievance received.  The unique identifying number shall consist of the AIM number assigned to the investigation resulting from the grievance. If the grievance does not result in an investigation and subsequent AIM number, staff shall use a unique identification number (i.e., 00001,00002, etc.) in place of the AIM number.  If any facility staff receives a PREA Grievance, the PREA Grievance shall be immediately forwarded to the appropriate facility staff, as identified by the Warden, to respond to the PREA grievance.  Additionally, all allegations of sexual abuse not previously investigated shall be referred for investigation as set forth in PD 01.01.140 "Internal Affairs" and this policy.

II. Any PREA Grievance containing issues other than sexual abuse shall be denied and returned to the prisoner with instructions to submit the grievance in accordance with PD 03.02.130 "Prisoner/Parolee Grievances." Any PREA grievance containing multiple issues, which include sexual abuse and non-sexual abuse issues, shall be processed in accordance with this policy in order to address the allegations of sexual abuse only. The prisoner shall be notified in the PREA Grievance response that s/he must submit a new grievance in accordance with PD 03.02.130 to address any concerns not related to sexual abuse.

(Ex. B ¶¶ EE to II.)  MDOC P.D. 03.02.130, which governs grievances submitted under the three-step grievance policy, requires the grievance coordinator to forward any grievances involving sexual abuse, harassment, or misconduct to the PREA Coordinator:

D. Grievances filed regarding sexual abuse, including those filed by a third party, shall not be processed as grievances under this policy but shall be reported in accordance with PD 03.03.140 "Prison Rape Elimination Act (PREA) and Prohibited Sexual Conduct Involving Prisoners."  Any grievance submitted under this policy that contains an allegation of sexual abuse shall be copied by the Grievance

Coordinator and forwarded to the PREA Coordinator.  The original grievance shall be returned to the prisoner.  If the grievance also includes a non-PREA grievable issue, it will need to be refiled by the prisoner.

(Ex. A ¶ D.)

## III.    Likely points of contention

The parties are in general agreement that Plaintiffs needed to exhaust his claims prior to filing his lawsuit, but disagree as to whether MDOC Defendant Perttu interfered with their abilities to exhaust their administrative remedies under either the regular grievance process or the PREA grievance process. Plaintiffs claims that Perttu destroyed their grievance forms on multiple occasions, which Perttu denies.  Richards also claims that he exhausted some claims through the regular grievance process.  MDOC Defendants will show that the grievances which Richards pursued through Step III did not exhaust his claims against them.

## CONCLUSION AND RELIEF SOUGHT

MDOC Defendants will request that the Court conclude that Plaintiffs did not exhaust administrative remedies against them, and dismiss all three lawsuits.

Respectfully submitted,

Dana Nessel
Attorney General

*s/ Joseph Y. Ho*
JOSEPH Y. HO
Assistant Attorney General
Attorney for MDOC Defendants
MDOC Division
P.O. Box 30217
Lansing, MI  48909

(517) 335-3055
hoj@michigan.gov
Dated:  October 15, 2021                    P77390

### CERTIFICATE OF SERVICE (E-FILE)

I hereby certifies that on October 15, 2021, I electronically filed *Defendant's Trial Brief with corresponding exhibits* together with this *Certificate of Service* with the Clerk of the Court using the ECF System, which will provide electronic copies to parties of record and on October 18, 2021 a hard copy was placed in First-Class Mail, postage paid, fully addressed as follows:

Kyle B. Richards #641715
Baraga Correctional Facility
13924 Wadaga Rd.
Baraga, MI 49908-9204

_____

Kenneth D. Pruitt #708518
Baraga Correctional Facility
13924 Wadaga Road
Baraga, MI 49908-9204

_____

Robert L. Kissee #575639
*In Pro Per*
Macomb Correctional Facility
34625 26 Mile Road
Lenox Township, MI 48048

And to:

USDC-Western District of Michigan
Magistrate Judge Maarten Vermaat
PO Box 698
Marquette MI 49855

*/s/ Joseph Y. Ho*
Joseph Y. Ho (P77390)
Assistant Attorney General
Attorney for MDOC Defendants
MDOC Division