UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

KYLE B. RICHARDS, #641715,

        Plaintiff,

v.

GRETCHEN WHITMER, et al.,

        Defendants.
_____/

Case No. 2:20-cv-122

Hon. Hala Y. Jarbou
U.S. District Judge

## REPORT AND RECOMMENDATION

### I. Introduction

This Report and Recommendation (R&R) addresses Defendant Perttu's motion for summary judgment (ECF No. 80).

Plaintiff state prisoner Kyle Richards initiated this civil rights action pursuant to 42 U.S.C. § 1983 on June 24, 2020.[1]  In his verified complaint, Plaintiff alleged

---

[1] Also pending before this Court are *Richards et al. v. Perttu*, W.D. Mich. Case No. 2:20-cv-76, and *Richards v. Taskila et al.*, W.D. Mich. Case No. 2:20-cv-194, filed by Richards and two other state prisoners. All three cases involve claims against Defendant Resident Unit Manager (RUM) Perttu. The defendants filed motions for summary judgment based on exhaustion in all three cases. On July 29, 2021, this Court denied the defendant's motion for summary judgment in *Richards et al. v. Perttu* because there was a genuine issue of material fact regarding whether the defendant thwarted Plaintiffs' efforts to exhaust. (W.D. Mich. Case No. 2:20-cv-76, ECF No. 105.) On August 31, 2021, the undersigned held a status conference in that case. (W.D. Mich. Case No. 2:20-cv-76, ECF No. 117.) Because the plaintiffs made allegations of thwarting in *Richards et al. v. Perttu*, W.D. Mich. Case No. 2:20-cv-76, and in this case, Perttu requested bench trials on exhaustion in both cases pursuant to *Lee v. Willey*, 789 F.3d 673 (6th Cir. 2015). The undersigned granted Perttu's request and issued an Order setting a bench trial on exhaustion in this case. (ECF No. 106.) The undersigned concludes, however, that the Court should address the

that while he was confined at Baraga Correctional Facility (AMF) in Baraga, Michigan, four employees of the Michigan Department of Corrections (MDOC) violated his rights under federal and international law. In its February 4, 2021 opinion, this Court dismissed all claims except for Richards's claims that AMF Resident Unit Manager (RUM) Perttu was deliberately indifferent to Richards's serious risk of harm by ignoring and encouraging attacks against him. RUM Perttu moves for summary judgment on the basis that Richards failed to exhaust his administrative remedies prior to filing suit.

For the foregoing reasons, the undersigned finds that there is a genuine issue of material fact as to whether Richards was thwarted from exhausting his remaining claims against RUM Perttu. Accordingly, the undersigned recommends that the Court deny Perttu's motion for summary judgment.

---

motion for summary judgment prior to conducting a bench trial on exhaustion. The aim of summary judgment is to determine whether a genuine issue of material fact exists. Fed. R. Civ. P. 56(a). However, the purpose of a bench trial on exhaustion is to determine whether a defendant has proven by a preponderance of the evidence that a plaintiff has failed to exhaust his administrative remedies. *See, e.g., Alexander v. Calzetta*, No. 2:16-CV-13293, 2018 WL 8345148, at *8 (E.D. Mich. Nov. 30, 2018), *report and recommendation adopted*, No. 16-CV-13293, 2019 WL 1011106 (E.D. Mich. Mar. 4, 2019) (conducting bench trial on exhaustion after denying motion for summary judgment, and concluding "that the preponderance of the evidence supports a finding that Plaintiff did not file the Disputed Grievance . . . and that he, therefore, has not exhausted his administrative remedies"). Thus, the undersigned concludes that correct procedure is to address a defendant's motion for summary judgment on exhaustion first, and then proceed to a bench trial on the issue of exhaustion if a defendant's motion for summary judgment is denied.

## II.     Factual Allegations

The facts underlying Plaintiffs' remaining claims were set forth in this Court's February 4, 2021 screening opinion:

> Plaintiff's few factual allegations relate to the multiple physical attacks he has endured and believes he will continue to endure while in prison. Plaintiff believes he has been targeted because, as he asserts, he identifies as a bisexual child lover (BCL), pedophile, and pedosexual (see, e.g., Compl., ECF No. 1, PageID.15), and "[p]edophiles in prison are frequent targets of . . . violence" (id., PageID.3).
> Connected to this identification, Plaintiff alleges that he was attacked at least 10 times in 2020. Presumably as part of an incomplete list of the attacks, Plaintiff states that he was assaulted on February 4, March 10, April 5, May 7, and June 15, 2020. The assailants in most of these attacks allegedly referenced Plaintiff's attraction to children. Plaintiff contends that these attacks are hate crimes within the description of 34 U.S.C. § 30501 because he was, and continues to be, targeted for his sexual orientation. Plaintiff appears to focus his first claim, however, on an argument that Defendants have been dismissive that his allegations constitute hate-based violence under § 30501. Additionally, Defendant Perttu allegedly responded to the attacks on April 5, May 7, and June 15, 2020, but Perttu "refused to lock any of the assailants up, or even remove them from [Plaintiff's] environment." (Compl., ECF No. 1, PageID.4.)
>
> . . .
>
> Plaintiff alleges that Defendant Perttu encourages inmates to attack Plaintiff. In combination with Defendant Perttu's alleged failure to discipline prisoners who attack Plaintiff, Plaintiff alleges that Perttu announced over the public address system in Plaintiff's unit, "[h]ello, you child[-]touching queers. Cell 229 is a rapist." (*Id.*) Further, at the time Plaintiff filed his complaint, Defendant Perttu had allegedly announced every morning for nearly two months that "Inmate Richards in [Cell] 239  is a pedophile." (*Id.*, PageID.9.) Plaintiff also alleges that Defendant Perttu gave Plaintiff's mental health file, which described Plaintiff's attraction to children, to other prisoners.

(ECF No. 64, PageID.293-294.)

### III. Summary Judgment Standard

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Kocak v. Comty. Health Partners of Ohio, Inc.*, 400 F.3d 466, 468 (6th Cir. 2005). The standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d 433, 436 (6th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). The court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Twin City Fire Ins. Co. v. Adkins*, 400 F.3d 293, 296 (6th Cir. 2005).

### IV. Exhaustion

A prisoner's failure to exhaust his administrative remedies is an affirmative defense, which Defendants have the burden to plead and prove. *Jones v. Bock*, 549 U.S. 199, 212-16 (2007). "[W]here the moving party has the burden -- the plaintiff on a claim for relief or the defendant on an affirmative defense -- his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986). The Sixth Circuit has repeatedly emphasized that the party with the burden of proof "must show the record contains evidence satisfying the burden of persuasion and that

4

the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Cockrel v. Shelby Cnty. Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001). Accordingly, summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

Pursuant to the applicable portion of the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a), a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must exhaust his available administrative remedies. *Porter v. Nussle*, 534 U.S. 516, 532 (2002); *Booth v. Churner*, 532 U.S. 731, 733 (2001). A prisoner must first exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process. *Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741; *Knuckles El v. Toombs*, 215 F.3d 640, 642 (6th Cir. 2000); *Freeman v. Francis*, 196 F.3d 641, 643 (6th Cir. 1999). In order to properly exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules. *Jones*, 549 U.S. at 218-19; *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006). In rare circumstances, an administrative remedy will be considered unavailable where officers are unable or consistently unwilling to provide relief, where the exhaustion procedures may provide relief, but no ordinary prisoner can navigate it, or "where prison administrators thwart inmates from taking advantage of a grievance [or other administrative] process through machination, misrepresentation, or intimidation." *Ross v. Blake*, 578 U.S. 632, 648 (2016).

The most common procedure through which a prisoner in MDOC custody exhausts his administrative remedies is the grievance procedure set forth in Michigan Dept. of Corrections (MDOC) Policy Directive 03.02.130 (effective on March 18, 2019), sets forth the applicable grievance procedures for prisoners in MDOC custody at the time relevant to this complaint. Inmates must first attempt to resolve a problem informally within two business days of becoming aware of the grievable issue, unless prevented by circumstances beyond his or her control. *Id.* at ¶ Q. If oral resolution is unsuccessful, the inmate may proceed to Step I of the grievance process and submit a completed grievance form within five business days of the attempted oral resolution. *Id.* at ¶¶ Q, W. The inmate submits the grievance to a designated grievance coordinator, who assigns it to a respondent. *Id.* at ¶ Y. The Policy Directive also provides the following directions for completing grievance forms: "The issues should be stated briefly but concisely. Information provided is to be limited to the facts involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places and names of all those involved in the issue being grieved are to be included." *Id.* at ¶ S (emphasis in original).

If the inmate is dissatisfied with the Step I response, or does not receive a timely response, he may appeal to Step II by obtaining an appeal form within ten business days of the response, or if no response was received, within ten days after the response was due. MDOC Policy Directive 03.02.130 at ¶ DD. The respondent at Step II is designated by the policy. *Id.* at ¶ FF.

If the inmate is still dissatisfied with the Step II response, or does not receive a timely Step II response, he may appeal to Step III using the same appeal form. Id. at ¶¶ HH. The Step III form shall be sent within ten business days after receiving the Step II response, or if no Step II response was received, within ten business days after the date the Step II response was due. *Id.* The Grievance and Appeals Section is the respondent for Step III grievances on behalf of the MDOC director. *Id.* at ¶ II.

In addition, the grievance policy provides that, where the grievance alleges conduct that falls under the jurisdiction of the Internal Affairs Division pursuant to Policy Directive 01.01.140, the prisoner may file his Step I grievance directly with the inspector of the institution in which the prisoner is housed, instead of with the grievance coordinator, as set forth in ¶ W of Policy Directive 03.02.130. *Id.* at ¶ R. In such instances, the grievance must be filed within the time limits prescribed for filing grievances at Step I. *Id.* Regardless of whether the grievance is filed with the grievance coordinator or the inspector, the grievance will be referred to the Internal Affairs Division for review and will be investigated in accordance with MDOC Policy Directive 01.01.140. The prisoner will be promptly notified that an extension of time is needed to investigate the grievance. *Id.*

V.  **Analysis**

As noted in the Introduction, the question presented by Perttu's motion for summary judgment and Richards's brief in response is whether there is a genuine issue of fact as to whether prison officials thwarted Richard's attempt to exhaust his relevant grievance.

The Supreme Court held that the grievance process will be considered unavailable to prisoners whenever prison officials thwart the prisoners' attempts to exhaust "through machination, misrepresentation, or intimidation." *Ross*, 136 S.Ct. at 1859-60. The Eastern District of Michigan has explained that, in cases where a plaintiff claims that his efforts to exhaust were thwarted, the defendant must first show that the grievance process was generally available to the plaintiff. *Alexander v. Calzetta*, No. 2:16-CV-13293, 2018 WL 8345148, at *8 (E.D. Mich. Nov. 30, 2018), *report and recommendation adopted*, No. 16-CV-13293, 2019 WL 1011106 (E.D. Mich. Mar. 4, 2019). Then, once this showing has been made, the burden of production shifts to the defendant to produce evidence showing that he was thwarted in his attempts to use the grievance procedures. *Id.* The District Court for the Eastern District of Michigan outlined the process as follows:

> [O]nce a defendant carries the burden of showing that there was a generally available administrative remedy, and that the prisoner did not exhaust that remedy, the prisoner has the burden of production. That is, the burden shifts to the prisoner to come forward, with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him.

*Id.* at *6 (internal quotation marks and citation omitted).

In response to Perttu's motion for summary judgment (ECF No. 80), Richards asserted that Perttu prevented him from filing grievances regarding his remaining claims (ECF No. 84, PageID.2). According to Richards, Perttu picked and chose which grievances he would allow Richards to file and which he would destroy instead. (*Id.*, PageID.461.) Richards pointed to his declaration (ECF No. 41) and two declarations

8

executed by another AMF prisoner (ECF Nos. 16-1, 41-1) to support his allegations of thwarting.

Perttu replied to Richards's allegations, arguing that the declarations at best contained conclusory allegations and self-serving statements, failing to create a triable issue of fact. (ECF No. 87, PageID.470-471 (citing *Gill v. Suburban Cadillac of Lansing, LLC*, No. 1:18-CV-676, 2020 WL 207199, at *4 (W.D. Mich. Jan. 14, 2020).) The undersigned disagrees. Richards does not simply state that RUM Perttu thwarted his attempts to exhaust his administrative remedies. Instead, he provides specific dates on which he attempted to file certain numbers of grievances, which RUM Perttu then retrieved and destroyed in front of Richards and, according to the declaration provided by Larry Taylor, other prisoners. Though the undersigned is inclined to agree that Richards's assertion that Perttu selectively screened all grievances related to his claims in this case is far-fetched, the declarations, taken together, rise beyond the level of a mere scintilla of evidence. Moreover, the affidavit of AMF Grievance Coordinator Thomas Hamel (ECF No. 87-2), which simply states that grievance forms are widely available throughout AMF, does not overcome the issue of fact created by the Richards and Taylor declarations.

Accordingly, the undersigned concludes that there is a genuine issue of fact as to whether Richards was thwarted from properly exhausting his claim against RUM Perttu.

9

## VI.     Recommendation

The undersigned respectfully recommends that the Court deny Defendant's motion for summary judgment (ECF No. 80). If the Court adopts this recommendation, the undersigned will proceed with a bench trial on the issue of exhaustion. At the bench trial, the undersigned will determine whether Defendant has proven by a preponderance of the evidence that Richards has failed to exhaust his administrative remedies.

Dated:   December 30, 2021                    /s/ *Maarten Vermaat*
                                              MAARTEN VERMAAT
                                              U. S. MAGISTRATE JUDGE


**NOTICE TO PARTIES**

Any objections to this Report and Recommendation must be filed and served within fourteen days of service of this notice on you. 28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b). All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to file timely objections may constitute a waiver of any further right of appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).