UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

KYLE B. RICHARDS,

    Plaintiff,

v.

GRETCHEN WHITMER, et al.,

    Defendants.
_____/

Case No. 2:20-cv-122

Hon. Hala Y. Jarbou

## **ORDER**

On December 14, 2022, the magistrate judge held an evidentiary hearing on the issue of whether Plaintiff had exhausted available administrative remedies against Defendant Thomas Perttu before filing suit. On December 30, 2022, the magistrate judge issued a Report and Recommendation (R&R) (ECF No. 176), recommending that the Court dismiss Perttu due to Plaintiff's failure to exhaust his administrative remedies. The magistrate judge's analysis relied, in part, on the testimony and evidence from an evidentiary hearing held on November 4, 2021, in *Richards v. Perttu*, No. 2:20-cv-76 (W.D. Mich.). Before the Court are Plaintiff's objections to the R&R. (Pl.'s Objs., ECF No. 177.)

Under Rule 72 of the Federal Rules of Civil Procedure,

> the district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to. The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions.

Fed. R. Civ. P. 72(b)(3).

Objection 1

Plaintiff's first objection is that the magistrate judge failed to consider, misquoted, or misrepresented the testimony of several witnesses. For instance, Plaintiff asserts that Grievance Coordinator Thomas Hamel testified at the 2021 hearing that he was told not to process new grievances due to COVID, and that staff was not available to pick up new grievances. (Pl's Objs., PageID.961.) On the contrary, Hamel never testified that someone told him not to process grievances. Thus, the magistrate judge did not err by failing to consider such testimony.

Hamel did say that, at some point "during the COVID pandemic," the prison "didn't have the staff available to collect [grievances]." (11/4/2021 Hr'g Tr. 70, ECF No. 184, Case No. 2:20-cv-76.) But then he backtracked, saying that "there wasn't a staff shortage to collect grievances." (*Id.*) Thus, at best, his testimony was equivocal on this point. Even so, Plaintiff never indicated when this shortage occurred or demonstrated that it impacted him. In fact, Plaintiff was able to file many grievances during the relevant time period. (R&R 10.) And as of May 11, 2020, Plaintiff was housed in the general prison population and did not need an officer to collect his grievances; he could submit them in the prison mailbox on his own. (*Id.* at 18.) Accordingly, the Court finds no error in the consideration of Hamel's testimony.

Plaintiff also contends that Perttu testified at the 2021 hearing that he may have thrown one of Plaintiff's grievances away, that he would not let Plaintiff file grievances, and that there was no staff available to collect grievances. Similarly, Plaintiff contends that Grievance Manager Richard Russell testified that there was a lack of staff available to collect or investigate grievances, and that he was told to not log any "AIMS." (Pl.'s Objs., PageID.962.) Neither Perttu nor Richards gave such testimony. Accordingly, the magistrate judge did not err by failing to consider it.

2

Objection 2

Next, Plaintiff contends that the magistrate judge failed to consider that Plaintiff was on "grievance restriction" in April and May 2020, which meant that Plaintiff could not file grievances without staff permission. However, grievance restriction alone does not establish that the grievance remedy was unavailable to him. In fact, Plaintiff never expressly argued that the grievance restriction impaired his ability to exhaust his claims. His primary theory was that RUM Perttu thwarted his ability to exhaust his claims by destroying his grievances. (*See* Pl.'s Resp. to Mot. for Summ. J., ECF No. 84, PageID.460-462.) But to obtain permission to file a grievance, Plaintiff had to ask the grievance coordinator. (*See* 11/4/2021 Hr'g Tr. 187.) RUM Perttu was not the grievance coordinator.

Plaintiff argues that his prisoner witnesses testified that prison staff denied him permission to file grievances; however, the Court cannot locate such testimony. Those witnesses generally testified that Perttu destroyed Plaintiff's grievances (or asked a prisoner to do so), rather than denying permission to file them. And at any rate, the magistrate judge properly discounted the credibility of those witnesses, so the Court discerns no error that would lead to a different outcome.

Objection 3

Plaintiff argues that the magistrate judge's analysis is not consistent with *Napier v. Laurel Cnty.*, 636 F.3d 218 (6th. Cir. 2011), which noted that prisoners are not required to "utilize every conceivable channel to grieve their case." *Id.* at 224. However, the magistrate judge stated the correct standard, which is whether Plaintiff's efforts were "sufficient under the circumstances." (R&R 22.) The magistrate judge properly concluded that Plaintiff's conduct did not meet this standard because the preponderance of the evidence demonstrated that he neglected to take simple steps that were available to him. (*Id.*) Plaintiff again relies upon the testimony of his witnesses,

3

who purportedly saw Perttu destroy or impede Plaintiff's grievances, or saw Plaintiff attempt to give grievances to another official, but the magistrate judge properly discounted that testimony. Thus, this objection is meritless.

Objection 4

Citing the testimony of his prisoner witnesses, Plaintiff argues that the magistrate judge failed to consider the impact of threats of physical violence against Plaintiff when determining whether those threats prevented him from filing grievances. *See Himmelreich v. Fed. Bureau of Prisons*, 766 F.3d 576, 477 (6th Cir. 2014) ("[W]e have excused a prisoner's lack of complete compliance when the improper actions of prison officials render the administrative remedies functionally unavailable."). However, Plaintiff never made that argument in this case, either at the evidentiary hearing or in his response to Defendants' motion for summary judgment, so the magistrate judge did not err by failing to consider this issue.[1]

Furthermore, as indicated above, the magistrate judge properly concluded that Plaintiff's witnesses were not credible. Those witnesses gave testimony that was inconsistent with their lock histories and with the records of Perttu's location in the prison. Their testimony was also inconsistent with Perttu's testimony, who denied threatening Plaintiff. (12/14/2022 Hr'g Tr. 115, ECF No. 193.) Thus, the Court discerns no error.

Objection 5

Plaintiff argues that the magistrate judge improperly discounted the testimony of Plaintiff's witnesses by relying on the questions that Plaintiff asked them. The magistrate judge noted that at the November 4, 2021, hearing Plaintiff asked "yes or no questions" of several witnesses,

---

[1] Plaintiff made an argument about threats at his evidentiary hearing in case 2:20-cv-76, but those arguments are not part of this case. The parties stipulated, and the magistrate judge made clear, that only the "testimonies and exhibits" from the 2021 evidentiary hearing in case 2:20-cv-76 would be admitted in this case. (Joint Statement, ECF No. 170, PageID.879; 12/14/2022 Hr'g Tr. 3.)

4

providing them the "date and details of Perttu's alleged destruction of grievances," to which the witnesses "simply agreed." (R&R 20.) But after Perttu objected, Plaintiff asked more "open-ended questions," to which the witnesses "were unable to provide specific dates of thwarting." (*Id.*) Here, the magistrate judge was evaluating the credibility of the witnesses' testimony. There is nothing improper in this reasoning.

Plaintiff also argues that his form of questioning was proper, but the Court finds no error in the magistrate judge's rulings. Plaintiff's questions contained specific dates and details that guided his witnesses to particular answers. Such questions impair a fact-finder's ability to assess the actual knowledge and credibility of those witnesses. Thus, this objection is meritless.

Objection 6

Plaintiff argues that it was improper for the magistrate judge to rely on a record of the lock histories of his witnesses because that record was not authenticated. However, Plaintiff told the magistrate judge that he did not object to the admission of that record as evidence. (12/14/2022 Hr'g Tr. 82.) Consequently, the magistrate judge could consider it.

Objection 7

Plaintiff argues that it was improper for the magistrate judge to consider a record tracking Perttu's movements in the prison because the system that created the record was unreliable. To track his movements when conducting rounds, Perttu testified that he carried a wand that he would use to tap buttons on cells throughout the prison. (12/14/2022 Hr'g Tr. 91.) The wand downloaded the location of each button and associated those locations with him, after Perttu first identified himself as the user of the wand. (*Id.*) Perttu testified that "once in a while but not very often," another officer would grab the wand after Perttu used it, without registering it to the other officer, and then movements tracked by the wand would show up in the tracking log as Perttu's

5

movements. (12/14/2022 Hr'g Tr. 119-20.) However, such an occasional mistake does not render the entire record so unreliable that it would be inadmissible as evidence of Perttu's movements in the prison. Contrary to Plaintiff's objections, Perttu did not testify that his tracking log "got frequently mixed up with another officer who he shared his wand with[.]" (*See* Pl.'s Objs., PageID.974.)

Plaintiff also contends that Perttu could not authenticate the tracking log because an outside company maintains and operates the tracking system. However, Perttu testified about his personal knowledge and familiarity with the system and the reports that it creates. (*See* 12/14/2022 Hr'g Tr. 99-102.) The magistrate judge properly relied on this testimony to admit the tracking log as a record of a regularly conducted activity under Rule 803(6) of the Federal Rules of Evidence. (*See id.* at 104-05.) Perttu did not have to be an employee of the organization maintaining the system to authenticate that log.

Objection 8

The Court has denied Plaintiff's request for appointment of counsel on at least four occasions in this case. Plaintiff contends that the lack of counsel at the evidentiary hearing prejudiced him because he is "mentally handicap[ped]." (Pl.'s Objs., PageID.975.)

The appointment of counsel is justified "only by exceptional circumstances." *Lavado v. Keohane*, 992 F.2d 601, 606 (6th Cir. 1993). The Court considers the legal and factual complexity of the case as well as the plaintiff's ability to represent himself. *Id.* The Court has considered these factors several times in this case and has concluded that appointment of counsel is not warranted, either for the evidentiary hearing or for the case more broadly.

Here, Plaintiff's medical records indicate that he has a history of bipolar disorder, oppositional defiant disorder, and attention deficit disorder. (*See* Psychiatric Evaluation, ECF

No. 1, PageID.46.)   Plaintiff also contends, without evidence, that he has been declared incompetent to proceed to trial on two occasions.

Regardless, the record of the evidentiary hearing thoroughly undermines Plaintiff's assertion of a handicap or disability.  Plaintiff asked cogent questions of his witnesses, raised sophisticated arguments about the admissibility of evidence, and presented organized, coherent arguments in support of his position.  He was also able to call multiple witnesses, examine them, and offer their testimony to support his case.  Thus, he was capable of representing himself.  Furthermore, the evidentiary hearing was not legally or factually complex.  Accordingly, the Court discerns no error in its decisions denying appointment of counsel.

Objection 9

Plaintiff contends that MDOC policy permitted him to exhaust a claim regarding sexual harassment by making a *verbal* complaint to prison staff, and that it was the prison staff's obligation to document that complaint in writing.  During the relevant time period, MDOC Policy Directive 03.03.140 ¶ Y provided as follows:

> Prisoners may report allegations of conduct prohibited by this policy, including threats of such conduct and retaliation for reporting such conduct, verbally or in writing to any department employee through the MDOC sexual abuse hotline, through the PREA grievance process as outlined in this policy, through the legislative corrections ombudsman, or through a third party. If reported verbally to an employee, the employee shall document it in writing as soon as possible and report it to the appropriate supervisory staff.  When receiving any report of sexual abuse or sexual harassment, regardless of the source, staff shall promptly document and forward the complaint to the appropriate supervisory staff for investigation.

(MDOC Policy Directive 03.03.140 ¶ Y, ECF No. 120-3.)  Under this section, prisoners could report sexual abuse or harassment either verbally or in writing.

However, that section dealt with *reports*.  A different section addressed *grievances*.  Paragraph EE explained the "two-step" "PREA Grievance process."  (MDOC Policy Directive 03.03.140 ¶ EE; *see also* 11/4/2021 Hr'g Tr. 83-87 (testimony by PREA Coordinator Craig

Cummings about the PREA grievance process).)  When discussing the latter paragraph, the magistrate judge reasonably concluded that "only *written* grievances that have been appealed through Step II of the PREA grievance process serve to exhaust a prisoner's claims." (R&R 9 (emphasis added).)

Plaintiff argues that paragraph Y required prison officers to convert a verbal complaint of harassment into a written grievance, but paragraph Y did not mention the grievance process at all. In contrast, paragraph FF expressly required prisoners to use a "PREA Prisoner Grievance Form" to file a PREA grievance at "Step I" and then exhaust the PREA grievance process. (MDOC Policy Directive 03.03.140 ¶ FF.)  Paragraph FF did not mention the filing of a PREA grievance by a staff member after receiving a verbal complaint from a prisoner.  Nor did it allow for a verbal grievance.  Similarly, RUM Perttu testified that a PREA grievance would have to be in writing to exhaust the grievance process.[2] (12/14/2022 Hr'g Tr. 155-56.)  Accordingly, the Court agrees with the magistrate judge that prison policy required Plaintiff to file a written grievance in order to exhaust his claims.

In summary, the Court finds no error in the R&R.  Accordingly,

**IT IS ORDERED** that the R&R (ECF No. 176) is **APPROVED** and **ADOPTED** as the opinion of the Court.

**IT IS FURTHER ORDERED** that Defendant Perttu is **DISMISSED** because Plaintiff failed to exhaust his available administrative remedies before filing suit against Perttu.

---

[2] Contrary to Plaintiff's objections, RUM Perttu did not testify that prison staff have a duty put a prisoner's verbal complaint in writing "for PREA Grievances." (*See* Pl.'s Objs., PageID.977.)

Because the Court is dismissing the only remaining defendant, the Court will enter a judgment dismissing the case.

Dated: May 8, 2023                         /s/ Hala Y. Jarbou
                                           HALA Y. JARBOU
                                           CHIEF UNITED STATES DISTRICT JUDGE